# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,      :      Case No. 3:12-cr-049
                                          Related Case 3:15-cv-138

                                          District Judge Timothy S. Black
  - vs -                                   Magistrate Judge Michael R. Merz

TYLER HAMILTON,

                Defendant.      :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant Hamilton's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 74). On the Court's Order, the United States has filed a Response in Opposition (ECF No. 80) and Mr. Hamilton has filed a reply (ECF No. 82).

**Procedural History**

Tyler Hamilton was indicted by the grand jury for this District on April 10, 2012, and charged with conspiracy to distribute in excess of 100 grams of heroin (Count One) and actually distributing heroin (Counts Two and Three)(Indictment, ECF No. 14). On October 18, 2012, Hamilton entered into a Plea Agreement in which he agreed to plead guilty to Count Two (ECF No. 42, PageID 174). The plea was pursuant to Fed. R. Crim. P. 11(c)(1)(C) with an agreement

1

that an appropriate sentence would be between 60 and 120 months. *Id.* at PageID 175. Having considered a presentence investigation report ("PSR") from the Probation Department, Judge Black imposed a sentence of 120 months (ECF No. 60). Hamilton appealed and the judgment was affirmed. *United States v. Hamilton*, Case No. 13-3298(6th Cir. Jan. 16, 2014)(unreported; copy at ECF No. 72). Hamilton then filed the instant § 2255 Motion on April 15, 2015.

Hamilton pleads the following eleven grounds for relief:

>**Ground One:** Mr. Hamilton's constitutional right to the effective assistance of counsel was violated when his counsel failed to present evidence and expert testimony to demonstrate at sentencing that he had not committed murder.
>
>**Ground Two:** Mr. Hamilton's appellate rights should be reinstated to permit him to appeal the drug quantity and violence enhancements without the murder guidelines in place, as the Sixth Circuit did not reach those issues because it affirmed the use of the murder guidelines.
>
>**Ground Three:** Mr. Hamilton's constitutional right to the effective assistance of counsel was violated when his counsel failed to present evidence and expert testimony to demonstrate at sentencing that Mr. Hamilton did not employ violence during a drug trafficking offense.
>
>**Ground Four:** Mr. Hamilton's constitutional right to effective assistance of counsel was violated when his counsel failed to present evidence to demonstrate at sentencing that the drug quantity was less than the district court found.
>
>**Ground Five:** Mr. Hamilton's constitutional right to the effective assistance of counsel was violated when his counsel induced him to plead guilty to a Rule 11 (c)(1 )(C) agreement and a range of 60 to 120 months without explaining the strong likelihood of the murder guidelines being used to impose a sentence of no less than 120 months.

**Ground Six:** Mr. Hamilton's constitutional right to the effective assistance of counsel was violated when his appellate counsel failed to challenge the sentence on appeal on the grounds that the district court procedurally erred an imposed a substantively unreasonable sentence.

**Ground Seven:** New and previously undiscoverable evidence demonstrates that Mr. Hamilton acted in self-defense and that use of the murder guidelines and the enhancement for violence were improper.

**Ground Eight:** Mr. Hamilton ' s constitutional right to the equal protection of the law has been egregiously denied by counsel when he was denied full and complete access to "discovery" e.g. autopsy reports, forensic laboratory reports, serology reports and any other report(s) by his attorney and Miami Valley Regional Crime Laboratory. These reports are unquestionably necessary to assist Mr. Hamilton in the preparation of his defense. Mr. Hamilton has repeatedly attempted to obtain copies of the aforementioned reports from The Miami Valley Regional Crime Laboratory, Montgomery County Prosecuting Attorney's Office and his attorney, Mr. Vincent Popp , Esq., all to no avail. This has unquestionably caused Mr. Hamilton to be prejudiced as his Fifth, Sixth & Fourteenth Amendment rights have been arbitrarily denied and maliciously impended [sic].

**Ground Nine:** Mr. Hamilton respectfully advances the proposition that a ballistics test should have been performed on the "pristine" bullet that was discovered by law enforcement at the scene of the shooting and counsel was ineffective for failing to ensure that this type of forensic test was performed by the appropriate laboratory.

**Ground Ten:** Mr. Hamilton's rights have been violated when he was capriciously denied a copy of the death certificate of the alleged victim, Mr. Robert Miller by the appropriate agency and defense counsel . This document was necessary to assist Mr. Hamilton in the preparation of his defense.

**Ground Eleven:** Mr. Hamilton has been denied access to forensic DNA reports of Mr. Robert Miller in violation of his Fifth and

> Sixth Constitutional Amendment rights that would assist him in his defense of the cross-referenced murder charge ion [sic] the above case number.

(2255 Motion, ECF No. 74.)

On the Court's Order (ECF No. 77), the United States has filed a detailed response to each of Mr. Hamilton's eleven grounds for relief (ECF No. 80). Hamilton's reply, styled "Movant's Answer to the Government's Opposition," elides discussion of the content of the Government's Opposition (ECF No. 82). Instead he asserts this Court should hold an evidentiary hearing "to determine whether Movant's ineffective assistance claim is supported by the state document that Movant was unsuccessful in obtaining thus far." *Id.* at 445. He continues "[t]o the extent that Movant's other claims are dependant [sic] upon the principal claim of ineffective assistance concerning the murder cross reference, Movant does not address those issue[s] in this pleading." *Id.*

The Rules Governing § 2255 Proceedings do not give a movant the option of waiting to reply to Government defenses on some claims until after there has been an evidentiary hearing on one of the claims. Rather, Rule 5(d) provides "[t]he moving party may submit a reply to respondent's answer within a time fixed by the judge." In the Order for answer. the Court fixed the reply date as twenty-one days after the answer was filed (Order, ECF No. 77, PageID 411). On Mr. Hamilton's motion, the Court extended that time by sixty days on August 25, 2016 (ECF No. 81 and order granting). But the Court has never permitted Mr. Hamilton to split his reply and wait to file on some claims until after others are heard. The § 2255 Motion is ripe on the merits on the pleadings already filed.

4

# Analysis

**Ground One:  Ineffective Assistance of Trial Counsel:  Failure to Present State Prosecutor's Report at Sentencing.**

What Hamilton refers to as his "principal claim" is ineffective assistance of trial counsel in "fail[ing] to present evidence and expert testimony at sentencing that he had not committed murder." (2255 Motion, ECF No. 74, PageID 393.)  The Government argues this is insufficient to plead a claim or even warrant a hearing because it is completely conclusory – it does not say what evidence or expert testimony should have been given (Opposition, ECF No. 80, PageID 428, citing *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013)), for the proposition that conclusory allegations are insufficient.

Hamilton admits conclusory allegations are insufficient, but eliminates the ambiguity of Ground One in his reply:

> Movant's claim does not rest on mere allegations.  Instead, Movant's claim rests on a simple premise:  had counsel introduced the report from the State Prosecutor's Office that detailed why Movant was not guilty of murder, there is a reasonable probability that the court may have agreed and not applied the murder cross reference.

(ECF No. 82, PageID 446-447.)

The Government's Opposition points out that defense counsel did not fail to challenge the murder allegations.  Rather, attorney Vincent Popp introduced a number of relevant exhibits and vigorously cross-examined the only witness presented by the Government on the issues, eliciting the admission that the State had declined to prosecute Hamilton for murder because of the "castle doctrine."

At the sentencing hearing, the Government presented testimony from the investigating detective, Montgomery County Sheriff Detective Brad Daugherty, who related at length what he learned from an eyewitness, Brittany Olacher. She had traveled with the deceased, Robert Travis Miller, to Dayton from Hillsboro, Ohio, to buy heroin (Tr., ECF No. 67, PageID 295). After purchasing heroin from Hamilton, Miller was apparently dissatisfied with quality or quantity and went back to Hamilton's car to demand a refund. *Id.* at PageID 299. Miller had his upper body into the driver's window when Hamilton started to drive away. *Id.* Hamilton's car went

> four or five houses down with Mr. Miller hanging from the car. It stops. She hears one to two gunshots. She says that the door – the driver's door comes slightly open and then Travis Miller falls to the ground. She says she then sees Mr. Hamilton then stick the gun out the window and fire three more times as Travis Miller is on the ground trying to roll away from Mr. Hamilton's vehicle.

*Id.* at PageID 300. The coroner's report introduced at sentencing shows that Miller died of the gunshot wounds. *Id.* at PageID 306. The trajectory of travel of one of the bullets recovered at the scene confirmed Ms. Olacher's account that Miller was shot from above. *Id.* at PageID 307. Lack of stippling indicated the shot was not at close range. *Id.*[1] When Hamilton turned himself in about a week later, he told law enforcement he no longer had the firearm, precluding further forensic testing. His car had also been thoroughly cleaned on the inside. Based on what he learned in his investigation, Detective Daugherty concluded Miller was shot outside Hamilton's car. *Id.* at PageID 310.

On cross examination, Mr. Popp elicited the information that the Montgomery County Prosecutor's Office "refused homicide charges based on self-defense, citing the castle doctrine as the reasoning." *Id.* at PageID 321.

---

[1] Mr. Popp introduced an article showing this conclusion is not scientifically certain.

Judge Black delivered an oral decision on the murder question during the hearing. He noted that, in acting in self-defense, "a defendant is limited to using only as much force as reasonably appears to be necessary under the circumstances." *Id.* at PageID 335. He found the castle doctrine to be irrelevant because that doctrine is a part of Ohio law and federal law is applicable. *Id.* He also found that Hamilton did not act in self-defense, in part because he created the situation and in part because he had already successfully expelled Miller from the car when he shot Miller on the ground. *Id.* at PageID 336-37. After that finding, objections to the drug quantities recommended in the PSR became moot. *Id.* at PageID 338-39. Judge Black then sentenced Hamilton to 120 months imprisonment, the top of the agreed range, but sixty-eight months below the bottom of the Guideline range calculated in the PSR and accepted by the Court.

Hamilton hypothesizes that if Judge Black had had the actual report from the Montgomery County Prosecutor's Office, he would have been more likely to sentence without using the murder cross-reference and that it was ineffective assistance of trial counsel for Mr. Popp not to present it.

Mr. Hamilton has attempted to obtain the document himself through a private investigating firm, Veritas Investigations. On September 26, 2016, Assistant Montgomery County Prosecuting Attorney Joseph Saks refused to produce the document on a claim that it is privileged attorney work product (ECF No. 82-3, PageID 454, citing Ohio Revised Code § 149.43(A)(1)(v); *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St. 3d 161 (2010); and *Hickman v. Taylor*, 329 U.S. 495 (1947)).

There is no reason to believe that the prosecutor's office would have responded any differently to a request from Mr. Popp. Having practiced criminal law in Dayton for forty years,

7

Mr. Popp may well have anticipated that response when he did not make the request, assuming that is the case.

Mr. Hamilton asserts that if an evidentiary hearing were held, the report could be subpoenaed, but such a subpoena would be subject to the same work-product privilege defense that the prosecutor has already raised.  See Fed. R. Civ. P. 45(e)(2).  The Sixth Circuit has explained the critical distinction between types of attorney work product:

> The work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d [155] at 163 [6th Cir. 1989] (*quoting United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S. Ct. 2160, 2170 n. 11, 45 L. Ed. 2d 141 (1975)). The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). So-called "fact" work product, the "written or oral information transmitted to the attorney and recorded as conveyed by the client," *In re Antitrust Grand Jury*, 805 F.2d at 163, may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. *See Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988). However, absent waiver, a party may not obtain the "opinion" work product of his adversary; i.e., "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In re Antitrust Grand Jury*, 805 F.2d at 163-64 (citations omitted).

*Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th  Cir. 2002).  The underlying documents assembled by the prosecutor's office – essentially Detective Daugherty's report and the autopsy report – constitute attorney "fact" work product and those were available to the defense and used by Mr. Popp.  Beyond that, the rationale for the prosecutor's conclusion – what Mr. Hamilton refers to as their "reasoning"  -- is attorney opinion

work product and therefore privileged from compelled production by subpoena, a legal result Mr. Popp would certainly have anticipated.

To an important extent, however, Judge Black knew what their rationale was, to wit, that Hamilton had acted in self-defense as defined by the "castle" doctrine in Ohio.  In other words, this Court was not presented with a blank wall by the prosecutor which is so often the case when a person's arrest record shows "detective release" and nothing more.  Mr. Popp plainly presented that defense at sentencing and supported it with Detective Daugherty's report of the prosecutor's decision.  Judge Black also considered the prosecutor's refusal to prosecute and the reason and found it to be irrelevant under federal law.

That decision was correct because the murder cross-reference is to be applied if "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States."  (PSR, ¶ 41, citing U.S.S.G. § 2D1.1(d)(1)).

Self-defense is of course a defense to a charge of murder under federal law.  However, the federal defense does not include the "castle" doctrine.  The defense is explained to jurors in trials in district courts in the Sixth Circuit as follows:

> A person is entitled to defend himself against the immediate use of unlawful force.  But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.

Pattern Jury Instructions for the Sixth Circuit § 6.06.

Federal appellate courts have refused to add instructions along the lines of the castle doctrine.  For example, in *United States v. Morsette*, 622 F.3d 1200 (9th Cir. 2010), the district court was affirmed in its refusal to add to the standard instruction on self defense the language

9

"[i]n the home, the need for self-defense and property defense is most acute." This language is a good deal weaker from the defendant's perspective than the "castle" doctrine in Ohio law.

That doctrine as enacted by the Ohio General Assembly provides:

> [A] person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

Ohio Revised Code § 2901.05(B)(1). This provision was added to Ohio law in 2008 by 2008 S 184. The facts of this case as recited by Detective Dougherty at sentencing support the conclusion that Hamilton was occupying a vehicle and that Miller had entered that vehicle to the extent that only the lower half of his body protruded from the driver's window until he was shot. Those facts would provide a prosecutor with a reasonable basis for concluding it would be difficult to convict Hamilton of murder under Ohio law.

But, as Judge Black found, Ohio law is not relevant. The question on applying the murder cross-reference is whether Hamilton's acts would constitute murder under federal law if they had happened within the territorial or maritime jurisdiction of the United States.

Hamilton has procedurally defaulted on any substantive claim that his acts did not constitute murder under federal law because he did not raise that claim on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). All that is before the Court now is the question whether Mr. Popp provided ineffective assistance of trial counsel by not presenting the prosecutor's report.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance*, 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

11

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Based on the foregoing analysis, it was not deficient performance to fail to attempt to obtain the prosecutor's report. Hamilton's First Ground for Relief should be dismissed.

**Ground Two: Reinstatement of Appeal**

Mr. Hamilton claims in his Second Ground for Relief that his appeal should be reinstated so that the Sixth Circuit can rule on the drug quantity and violence enhancements that would have been applied to his case per the PSR if the murder enhancement had not been in place. Hamilton raised this claim on appeal, but the Sixth Circuit found it to be moot, given its affirmance of the murder cross-reference. *United States v. Hamilton*, *supra*. If the Court rejects the recommendation above on Ground One, eliminates the murder cross-reference, and re-sentences Hamilton, he will have an opportunity to submit evidence on these two points in a sentencing hearing and will automatically have the right to appeal if he contests them. This Court lacks authority, however, to reinstate the appeal in any other way. Ground Two should be dismissed without prejudice.

**Grounds Three and Four:  Ineffective Assistance of Trial Counsel Regarding Drug Quantity and Violence Enhancements**

In his Third and Fourth Grounds for Relief, Mr. Hamilton asserts Mr. Popp provided ineffective assistance of trial counsel when he did not present evidence and, as to the violence enhancement, expert testimony at sentencing regarding these enhancements.

As the Government notes in opposition, these claims are purely conclusory:  Hamilton does not say what evidence should have been presented.  Hamilton makes no attempt to correct this deficiency in his reply and these are not claims dependent on his First Ground for Relief.  Moreover both Judge Black and the Sixth Circuit found these claims moot as they did not form the basis for the sentence imposed.

For these reasons, Grounds Three and Four should be dismissed.

**Ground Five:  Ineffective Assistance in Failing to Advise of Likely Ten Year Sentence**

In his Fifth Ground for Relief, Mr. Hamilton claims Mr. Popp provided ineffective assistance of trial counsel when he did not advise Hamilton that Judge Black was likely to impose a ten year (120 month) sentence.

The Government defends by pointing to proof that Mr. Popp did advise Hamilton of the possible sentences and provides proof that Mr. Popp did advise Hamilton that a 10-year sentence was likely.  Hamilton makes no reply on this Ground.

There is no constitutional requirement that a defense attorney make a prediction of a likely sentence.  In any event, Mr. Popp did make the accurate prediction Hamilton claims he never made.  Ground Five should therefore be dismissed.

**Ground Six: Ineffective Assistance of Appellate Counsel: Failure to Challenge the Substantive Reasonableness of the Sentence**

In his Sixth Ground for Relief, Mr. Hamilton claims his appellate attorney provided ineffective assistance when he did not challenge the substantive reasonableness of the ten-year sentence.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key

14

issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).

Hamilton's assertion that there was a viable substantive unreasonableness argument to be made is completely conclusory and therefore fails to state a claim upon which relief can be granted. *Jefferson*, *supra*. As the Government points out, a within-Guidelines sentence is presumptively substantively reasonable  (Opposition, ECF No. 80, PageID 433, citing *United States v. Curry*,536 F.3d 571, 573 (6th Cir. 2008)).  Hamilton's sentence was sixty-eight months below the bottom of the Guideline range and Hamilton has presented nothing to show how his appellate attorney could have overcome the presumption.

**Ground Seven:  New Evidence**

In his Seventh Ground for Relief, Mr. Hamilton asserts he has new and previously undiscoverable evidence to show he acted in self-defense.  Again, the claim is purely conclusory: no such evidence is identified in the Motion or the reply.  Ground Seven should be dismissed.

**Grounds Eight, Nine, Ten and Eleven:  Denial of Discovery**

These four Grounds for Relief are discussed together because they raise many of the same issues.

In his Eighth Ground for Relief, Mr. Hamilton claims he has been denied equal protection of the laws because the Montgomery County Prosecutor, the Montgomery County Coroner, and Mr. Popp have denied him access to various documents.

As the Government's Opposition notes, a federal criminal defendant has no right to "discovery" against third parties so that failure to the Montgomery County Prosecuting Attorney or the Miami Valley Regional Crime Laboratory to produce documents to him could not have resulted in his being unconstitutionally convicted.  To the extent the referenced documents are exculpatory and were in the hands of the United States Attorney, their production to Mr. Popp constituted compliance with the constitutional requirements under *Brady v. Maryland*, 373 U.S. 83 (1963).  Nor does a defense attorney fail to provide effective assistance by failing to turn documents over to his client.  Grounds Eight is without merit.

Ground Nine claims ineffective assistance of trial counsel for failure to have a ballistics test run on the so-called pristine bullet.  Here again Hamilton pleads conclusions rather than facts and has offered no evidence of what such a ballistics test would show.

Ground Ten claims his rights have been violated by failure to produce Miller's death certificate.  To the extent this is a claim that the Government failed to produce exculpatory evidence, it is contrary to fact.  As the Government's Opposition shows, the death certificate was available at the sentencing hearing.  To the extent this is a claim that some other agency has failed to provide Hamilton with a copy of the death certificate, it is irrelevant to a § 2255 motion.

Finally, Ground Eleven claims Hamilton has been "denied access to forensic DNA reports of Mr. Robert Miller."  He does not suggest how such reports, if they exist, could possibly be relevant.  There was no doubt of the identity of the victim.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that Mr. Hamilton's Motion to Vacate be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 28, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).